UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BARBARA H.,

                              Plaintiff,

v.                                                      5:23-CV-00472
                                                                (DNH/ML)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
 *Attorneys for Plaintiff*
250 S. Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.         VERNON NORWOOD, ESQ.
 *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge

## REPORT-RECOMMENDATION

      Plaintiff Barbara H. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Dkt. No. 1.) This matter was referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Court Judge,

pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 8.) This case has proceeded in accordance with General Order 18.

Currently before this Court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 12, 14, 15.) For the reasons set forth below, this Court recommends the District Court grant Plaintiff's motion for judgment on the pleadings, deny Defendant's motion for judgment on the pleadings, and remand the Commissioner's decision for further administrative proceedings.

## I.     PROCEDURAL HISTORY

This case has a lengthy procedural history. On May 1, 2017, Plaintiff protectively filed applications for DIB and SSI, each alleging disability dating from September 1, 2016. (Administrative Transcript ("T.") 169-181.) Her applications were denied initially on June 29, 2017. (T. 60-85.) Plaintiff's subsequent request for a hearing was granted. (T. 125-139.) On March 12, 2019, Plaintiff testified before Administrative Law Judge ("ALJ") John P. Ramos. (T. 35-59.) ALJ Ramos issued an unfavorable decision on March 26, 2019. (T. 10-27.) The Appeals Council denied Plaintiff's request for review on May 11, 2020, and Plaintiff filed a complaint with the Northern District of New York. (T. 1-6, 586-592.)

While that litigation was pending, the parties agreed to a stipulation remanding Plaintiff's disability claim, and the Honorable Thérèse Wiley Dancks ordered remand to the Appeals Council on March 8, 2021. (T. 584-585, 623.) On April 15, 2021, the Appeals Council remanded Plaintiff's disability claim to ALJ Ramos, with instructions to re-evaluate the combined functional limitations imposed by Plaintiff's severe and non-severe impairments. (T. 619-620.)

On August 17, 2021, ALJ Ramos held a supplemental hearing by telephone to hear additional testimony from Plaintiff and vocational expert ("VE") James Soldner. (T. 556-583.) On August 30, 2021, ALJ Ramos issued a partially favorable decision, finding Plaintiff became disabled as of December 5, 2020, when her age category changed to an individual closely approaching advanced age. (T. 912-927.) In response, Plaintiff commenced a new proceeding in the Northern District of New York. Again, the parties stipulated to a remand for further administrative proceedings, and the Honorable Gary L. Sharpe ordered remand to the Appeals Council on July 6, 2022. (T. 936.) On September 16, 2022, the Appeals Council remanded Plaintiff's disability claim for further evaluation of the medical opinion evidence, particularly the opinion from consultative examiner Dr. Kalyani Ganesh. (T. 940-941.) Because ALJ Ramos had already decided Plaintiff's claim twice, the Appeals Council directed that the matter be assigned to a different ALJ. (T. 941.)

On February 1, 2023, ALJ Elizabeth Koennecke held a telephonic hearing at which Plaintiff and VE Marian Marracco testified. (T. 888-911.) On February 13, 2023, ALJ Koennecke issued an unfavorable decision, finding Plaintiff was not disabled during the period between the alleged onset date of September 1, 2016 and December 4, 2020. (T. 864-887.)

Plaintiff commenced this proceeding on April 17, 2023 to challenge the Commissioner's most recent denial of disability benefits. (Dkt. No. 1.)

## II. GENERALLY APPLICABLE LAW

### A. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.*

*Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court

cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B. Standard for Benefits[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or

---

[1] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

5

>equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### III. FACTS

On her alleged onset date, Plaintiff was 45 years old. (T. 169). Plaintiff attended regular education classes in high school and obtained a GED in 1988. (T. 202, 307.) During the relevant period, she lived with her two of her three children, both teenagers. (T. 307). Plaintiff's eldest daughter visited frequently to assist with shopping and household tasks. (T. 51, 310.) Plaintiff's employment history includes positions at several grocery stores with job responsibilities ranging from cashier to deli manager. (T. 39-40, 238.) She testified that she stopped working in 2016 due to her physical impairments. (T. 40-41.)

Plaintiff reported chronic arthritis pain in her knees that made it difficult to remain in a standing or sitting position for extended periods and was aggravated by physical activity including walking, kneeling, squatting, or climbing stairs. (T. 484.) Imaging reports showed bilateral osteoarthritis in her knees that was considered "fairly advanced" for her age. (T. 365, 378). Her body mass index ("BMI") is over fifty, and she has been diagnosed as morbidly obese. (T. 304, 400, 416-417, 789.) Due to her weight, her physicians consider her a poor candidate for knee replacement surgery. (T. 378, 789.) Plaintiff has used a cane since approximately June

2017. (T. 396, 471.) Her physical impairments and inability to work impacted her mental health, and her primary care physician prescribed medication for anxiety and depression. (T. 308.)

The record includes Plaintiff's medical and mental health treatment history. Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

IV.     **ALJ KOENNECKE'S FEBRUARY 8, 2023 DECISION**

As an initial matter, ALJ Koennecke determined that Plaintiff met the insured status requirements through June 30, 2022. (T. 869.) Based upon her review of the administrative record, the ALJ next found that Plaintiff had not engaged in substantial gainful activity during the relevant period of September 1, 2016 through December 4, 2020. (T. 870.) At step two, the ALJ found that Plaintiff has the following severe impairments during the relevant period: "morbid obesity, bilateral knee degenerative joint disease, asthma, and diabetes with neuropathy affecting the lower extremities." (T. 870.)

At step three of the evaluation, the ALJ found that, during the relevant period, Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listing 1.18 (abnormality of a major joint), Listing 3.03 (asthma) and Listing 11.14 (peripheral neuropathy). (T. 872-873.) Next, the ALJ found that Plaintiff could perform less than the full range of sedentary work during the relevant period. (T. 873-876.) Specifically, she found that Plaintiff required a cane to walk over uneven terrain or long distances and needed to avoid unprotected concentrated exposure to respiratory irritants or extreme temperatures. (T. 873.)

In making this RFC determination, ALJ Koennecke stated that she considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as

consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Ruling ("SSR") 16-3p. (*Id*.)  The ALJ further stated that she considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c and 416.920c. (*Id*.)  The ALJ also considered Plaintiff's subjective complaints regarding pain, symptoms, and functional limitations and found that her "statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with her clinical findings, activities, or treatment history." (T. 876.)

At step four, the ALJ found that Plaintiff was not capable of performing her past relevant work during the relevant period as actually or generally performed. (T. 876-877.)  Relying on the VE testimony, the ALJ next found that, during the relevant period, Plaintiff was capable of performing jobs that existed in significant numbers in the national economy. (T. 877-878.)  Thus, the ALJ found that Plaintiff was not disabled from the application date of September 1, 2016 through December 4, 2020. (T. 878).

## V.     ISSUES IN CONTENTION

Plaintiff argues that the ALJ failed to properly evaluate the evidence regarding Plaintiff's ability to stand and/or walk during the relevant period, particularly the medical opinion evidence, in contravention of the Appeals Council's September 16, 2022 remand order. (Dkt. No. 12 at 9-16; Dkt. No. 15 at 3-6.)  The Commissioner contends that the ALJ properly evaluated all of the record evidence, including the medical opinion evidence and Plaintiff's activities of daily living, resulting in an RFC determination that is supported by substantial evidence. (Dkt. No. 14 at 9-15.)  The Commissioner's brief did not address compliance with the Appeals Council's September 16, 2022 remand order.

For the reasons set forth below, this Court recommends that Plaintiff's motion for judgment on the pleadings be granted, Defendant's motion for judgment on the pleadings be denied, and this case be remanded to the Social Security Administration for further administrative proceedings to allow proper evaluation of the medical opinion evidence and Plaintiff's RFC during the relevant period, in compliance with the Appeals Council's September 16, 2022 remand order.

## VI. LEGAL STANDARDS

### A. RFC and Medical Opinion Evidence

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945; *see Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL

587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions a plaintiff is capable of performing and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150; *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[2] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

---

[2] Plaintiff's applications were dated May 1, 2017. (T. 169-181.)  Thus, the new regulations apply in this case.

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same,

11

the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3. Administrative Mandate Rule

In judicial decision making, lower courts must follow the "mandate rule" inherent in the "hierarchical decision-making systems" created by the appellate process. *Stacey D. v. Comm'r of Soc. Sec.*, No. 3:20-CV-949 (FJS/ATB), 2022 WL 939411, at *5 (N.D.N.Y. January 1, 2022); *see also Frank K. v. Comm'r of Soc. Sec.*, 371 F. Supp. 3d 163, 170 (D. Vt. 2019) (citing *In re Coudert Bros. LLP*, 809 F.3d 94, 101 n.2 (2d Cir. 2015)). Under the mandate rule, "where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014).

In the Social Security context, that hierarchical decision-making system vests power "in ascending order, in an administrative law judge, the Appeals Council, the district court, the court of appeals, and the Supreme Court." *See Holst v. Bowen,* 637 F. Supp. 145, 147 (E.D. Wash. 1986). Under that system, "the Supreme Court overrules appellate court decisions, not the other way around. The court of appeals overrules decisions of the trial court, not the other way around. And the district court overrules the Appeals Council, not the other way around." *Holst*, 637 F. Supp. at 147. Extending that to the administrative process, the Appeals Council overrules the ALJ, not the other way around.

The Social Security regulations embody that principle by imposing what has been called an "administrative version" of the mandate rule. *See Stacey D.*, 2022 WL 939411 at *6. An ALJ considering a matter on remand "**shall** take any action that is ordered by the Appeals Council and

12

**may** take any additional action that is not inconsistent with the Appeals Council's remand order."
20 C.F.R. §§ 404.977, 416.1477(b) (emphasis supplied). "Accordingly, 'an ALJ's failure to comply with the Appeals Council's order constitutes legal error and necessitates a remand.'" *Tracy v. Colvin*, No. 1:15-CV-00980 (MAT), 2017 WL 279556, at *2 (W.D.N.Y. Jan. 23, 2017) (alteration omitted) (quoting *Scott v. Barnhart*, 592 F. Supp. 2d 360, 371 (W.D.N.Y. 2009)); *see also King v. Colvin*, No. 18-CV-6586-MJP, 2020 WL 1080411, at *3 (W.D.N.Y. Mar. 6, 2020) (collecting cases holding that "failure to comply with the Appeals Council's remand order ... constitutes reversible error.").

## VII. ANALYSIS OF PLAINTIFF'S CLAIMS

### A. The ALJ Failed to Evaluate Dr. Ganesh's Opinion In Accordance with the Appeals Council's September 16, 2022 Remand Order.

#### 1. Dr. Ganesh's Consultative Opinion

On June 23, 2017, Dr. Kalyani Ganesh conducted a consultative physical examination of Plaintiff. (T. 303-306.) Dr. Ganesh observed that Plaintiff was morbidly obese and decided to perform the majority of the examination with Plaintiff seated in a chair due to safety concerns. (T. 304.) Based on the examination, Dr. Ganesh opined that Plaintiff had no limitations with regard to sitting, standing, and using her upper extremities, but had a "moderate limitation" with regard to walking and climbing. (T. 306.) Dr. Ganesh further opined that Plaintiff relied on a cane "as needed." (*Id*.)

#### 2. Appeals Council Instruction to Re-evaluate Dr. Ganesh's Opinion

In his August 30, 2021 partially favorable decision, ALJ Ramos deemed the opinion of consultative examiner Dr. Kalyani Ganesh to be "persuasive" because "it was supported by her

13

examination findings and was generally consistent with other evidence of record, including the claimant's treatment notes and activities." (T. 924.)

Following remand by the District Court, the Appeals Council reviewed ALJ Ramos' evaluation of Dr. Ganesh's opinion and deemed it deficient. (T. 940-941.) Specifically, the Appeals Council found:

> The hearing decision does not contain an adequate evaluation of the opinion evidence of record and its impact on the claimant's residual functional capacity. Kalyani Ganesh, M.D., the consultative examiner, opined on June 23, 2017 that the claimant had no limitation with sitting, standing, and the use of her upper extremities. [citation omitted]  She also opined the claimant had moderate limitations in walking and climbing, and required a cane as needed only. [citation omitted]  The Administrative Law Judge (ALJ) found Dr. Ganesh's opinion to be "persuasive" because it was supported by her examination findings and was generally consistent with other evidence of record, including the claimant's treatment notes and activities. [citation omitted]
>
> **However, Dr. Ganesh's assessment is more restrictive than the assessed residual functional capacity.  While Dr. Ganesh indicated that the claimant has moderate limitations in walking, the residual functional capacity in the decision states that the claimant is limited to sedentary work.** [citation omitted]  Even though sedentary jobs primarily involve sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. [citation omitted]  **The hearing decision does not contain any explanation why the walking limitation was not adopted in the residual functional capacity.**  According to Social Security Ruling 96-8p, an adjudicator must explain how any material inconsistencies or ambiguities were considered and resolved, and if the residual functional capacity conflicts with a medical source's opinion, the adjudicator must explain why the opinion was not adopted. Thus, it is necessary for the ALJ to further evaluate the opinion evidence of record and its impact on the residual functional capacity.

(T. 940-941.) (emphasis supplied).

### 3.     ALJ's Failure to Follow Appeals Council's Mandate

Considering Plaintiff's disability claim on remand, ALJ Koennecke evaluated Dr. Ganesh's opinion as follows:

> Upon consultative examination, on June 23, 2017, the claimant had some positive clinical findings, but was in no acute distress, needed no help changing for the exam, and exhibited a normal gait, no sensory deficits, 5/5 strength in her upper and lower extremities, and no muscle atrophy. [citation omitted] Kalyani Ganesh, M.D. opined that the claimant had no limitation to sitting, standing, and the use of her upper extremities; had moderate limitation to walking and climbing; and needed a cane as needed only [citation omitted]. Dr. Ganesh's opinion was generally persuasive as it was supported by her examination findings and was generally consistent with other evidence of record, including the claimant's treatment notes. However, the claimant was able to engage in several activities, including babysitting and shopping. Limiting the claimant to sedentary work significantly limits her standing/walking, even more than what a "moderate" limitation might contemplate. Thus, the above residual functional capacity finding accounts for the opinion that the claimant had a moderate limitation walking.

(T. 874.)

ALJ Koennecke made three separate findings regarding Dr. Ganesh's opinion, but none satisfied the Appeals Council's remand instructions. First, ALJ Koennecke found the opinion to be "generally persuasive" because it was supported by the consultative examination findings and "other evidence of record, including the claimant's treatment notes." (T. 874.) An almost identical finding by ALJ Ramos formed the basis for the Appeals Council's September 2022 remand order because it was deemed to inadequately address the scope of the consultative examiner's findings.

While ALJ Ramos made only general reference to Plaintiff's daily activities, ALJ Koennecke provided greater detail, specifying that Plaintiff's self-reported ability to babysit her grandchild and go shopping on a regular basis were consistent with an ability to perform sedentary work. (T. 210-211, 874.) This too falls short of the Appeals Council's direction to explain why the RFC included less restrictive walking limitations than opined by Dr. Ganesh, because the ALJ did not draw the requisite nexus between these limited activities and Plaintiff's ability to walk for up to one-third of an eight-hour workday, or a total of two hours over the

15

course of the workday. *See Tasha W. v. Comm'r of Soc. Sec.*, No. 3:20-CV-731 (TWD), 2021 WL 2952867, at *8 (N.D.N.Y. July 14, 2021) (remanding where ALJ failed to draw the necessary connection between Plaintiff's daily activities and the requirements of the RFC determination).

As a general rule, intermittent activities such as childcare and shopping form "a very weak basis" for establishing an RFC that is contrary to medical opinion evidence. *See Mallery v. Berryhill*, No. 3:17-CV-587 (DEP), 2018 WL 1033284, at *4 (N.D.N.Y. Feb. 22, 2018) (remanding where plaintiff's ability to perform certain activities outside the house formed "a very weak basis" for the ALJ's RFC determination, because all of the activities were performed at a rate other than eight hours a day, five days a week.). That is particularly true here, where the ALJ's conclusion is based on Plaintiff's written and oral testimony that her two teenage children helped her babysit her infant grandson, and that she was unable to keep up with the child when he became a more active toddler. (T. 210, 892.) Likewise, Plaintiff's eldest daughter assisted her with shopping, and Plaintiff relied on a motorized cart to get around the grocery store. (T. 51, 897.) Plaintiff also testified that she began using a cane after experiencing difficulty walking around an outdoor farmer's market. (T. 45-46.)

Finally, the ALJ appears to ignore or subvert the Appeals Council's mandate by summarily concluding that a limitation to sedentary work "significantly limits [Plaintiff's] standing/walking, even more than what a 'moderate' limitation might contemplate." (T. 874.) As a general principle, the ALJ is correct. Courts in this Circuit have found that a physician's description of "moderate" limitations is often consistent with the ability to perform light or sedentary work. *See Shawn M. v. Comm'r of Soc. Sec.*, No. 1:21-CV-254 (DB), 2024 WL 896926, at *10 (W.D.N.Y. March 1, 2024) (collecting cases); *Renee L. v. Comm'r of Soc. Sec.*,

No. 5:20-CV-00991 (TWD), 2022 WL 685285, at *9 (N.D.N.Y. Mar. 8, 2022) (collecting cases). However, this general principle is inapplicable given the procedural posture of this case. In September 2022, the Appeals Council decided that Dr. Ganesh's assessment of "moderate limitations" in Plaintiff's ability to walk was "more restrictive" than a sedentary RFC. (T. 940.) On remand, the ALJ had no authority to reach the opposite conclusion on the exact same record.[3] *See Steven C. v. Comm'r of Soc. Sec.*, 592 F. Supp. 3d 132, 137 (W.D.N.Y. 2022) (remanding where ALJ ignored Appeals Council's conclusion that sedentary work was inconsistent with medical opinion describing moderate limitations in sitting). As explained in the judicial context, "[i]t is not necessary to agree with an appellate ruling, but under any system of the rule of law it is necessary to follow it." *See United States v. Sawyer*, 907 F.3d 121, 126 (2d Cir. 2018) (Crawford, J., dissenting). Accordingly, the ALJ's failure to comply with the mandate of the Appeals Council constitutes legal error, and this Court thus recommends remand for further administrative proceedings to re-evaluate Dr. Ganesh's opinion in accordance with the Appeals Council's September 16, 2022 remand order. *See Tracy*, 2017 WL 279556, at *2 ("Accordingly, 'an ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand.'"); *Gorman v. Astrue*, No. 5:08–CV–0251, 2009 WL 4884469, at *10 (N.D.N.Y. December 10, 2009) (finding failure to comply with Appeals Council's remand order was error requiring remand). This re-evaluation will necessarily impact the ALJ's analysis of the supportability and consistency of the other medical opinion evidence.

---

[3] Courts have recognized that an ALJ may revisit an express or implicit finding in a remand order where there are "cogent" and "compelling" reasons such as "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *See, e.g., Marvin v. Colvin*, No. 3:15-CV-74 (GLS/CFH), 2016 WL 2968051, at *3 (N.D.N.Y. May 20, 2016)  None of those reasons are present in this case.

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be **GRANTED**; Defendant's motion for judgment on the pleadings (Dkt. No. 14) be **DENIED** and that the matter be **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  April 4, 2024
        Binghamton, NY

*/s/ Miroslav Lovric*
Miroslav Lovric
U.S. Magistrate Judge